IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**FELIX GILLISON, JR.,** *et al.,*

    **Plaintiffs,**

v.                                                                **Civil Action No. 3:16cv41**

**LEAD EXPRESS, INC.,** *et al.,*

    **Defendants.**

## MEMORANDUM OPINION

This matter comes to bar on the briefing submitted pursuant to this Court's Memorandum Opinion and Order regarding whether to permit limited jurisdictional discovery ("*Gillison I*"). (ECF Nos. 42, 43.) Plaintiffs Felix Gillison, Jr.[1] and Dawn Mays-Johnson ("Plaintiffs") filed their Brief Regarding Their Need for Jurisdictional Discovery (the "Discovery Brief"). (ECF No. 44.) Defendants Lead Express, Inc. ("Lead Express") and Takehisa Naito (collectively with Lead Express, "Defendants") responded, (ECF No. 45), and Plaintiffs replied, (ECF No. 46).

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, the matter is ripe for disposition. The Court exercises jurisdiction pursuant to

---

[1] On September 27, 2018, counsel for Gillison moved "to substitute Marcella P. Singh, as Administrator of the Estate of Felix M. Gillison, Jr., as the Plaintiff in this case, in place of Mr. Gillison, who died in June 2018." (Mot. Substitute 1, ECF No. 49.) Counsel for Gillison represent that Defendants consent to the Motion to Substitute. The Court will grant the Motion to Substitute. (ECF No. 49.)

28 U.S.C. § 1331.[2] For the reasons that follow, the Court shall not allow jurisdictional discovery, and will dismiss the Second Amended Complaint without prejudice.

## I. Procedural and Factual Background

### A. Factual Background[3]

This case arises out of a purported "sham business operation" orchestrated by Lead Express and its principal and alter ego, Takehisa Naito.[4] (Second Am. Compl. ¶ 2.) Lead Express obtains millions of consumer reports on consumers with whom it has no relationship. According to Plaintiffs, because Lead Express has no relationship with these consumers, it obtains reports without a permissible purpose, in violation of 15 U.S.C. § 1681b(f).[5] Plaintiffs

---

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Second Amended Class Action Complaint (the "Second Amended Complaint") alleges violations of 15 U.S.C. §§ 1681b(f) and 1681q of the Fair Credit Reporting Act (the "FCRA"). (ECF No. 25.)

[3] Plaintiffs bear the burden of ultimately proving grounds for personal jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). When, as here, no evidentiary hearing has occurred (which would require a showing of personal jurisdiction by a preponderance of the evidence), Plaintiffs need only make a prima facie showing of personal jurisdiction. *Id.* In evaluating whether a plaintiff has made a prima facie demonstration of personal jurisdiction, the Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Brooks v. Motsenbocker Advanced Devs., Inc.*, 242 F. App'x 889, 890 (4th Cir. 2007).
In *Gillison I*, the Court determined that Plaintiffs failed to meet their burden. Now, in determining whether the Court will grant leave to conduct jurisdictional discovery, the Court considers whether Plaintiffs' Second Amended Complaint contains "specific and substantive" allegations regarding the Court's jurisdiction that justify granting jurisdictional discovery. *See, e.g., Mamo v. BP P.L.C.*, No. 1:05cv1323, 2006 WL 572327, at *2 (E.D. Va. Mar. 7, 2006).

[4] Plaintiffs contend that Lead Express merely constitutes the alter ego of Naito, "who used the information obtained from Clarity to find leads for his internet payday lending companies." (Second Am. Compl. ¶ 40.)

[5] Section 1681b(f) provides:

(f) Certain use or obtaining of information prohibited

also assert that Lead Express obtained the consumer reports under false pretenses, by alleging that it was the "end user" of the reports.[6] (*Id.* ¶ 16.)

Plaintiffs represent some of the thousands of consumers whose consumer reports Lead Express obtained from Clarity Service, Inc. ("Clarity"), "a nontraditional consumer-reporting agency that specializes in assembling subprime consumer data." (*Id.* ¶ 12.) "Unlike traditional consumer-reporting agencies, most of Clarity's major customers did not buy its data to determine if a loan applicant would pay his or her bills." (*Id.* ¶ 13.) Rather, companies like Lead Express secretly purchase Clarity's consumer reports for the purpose of targeting vulnerable customers who might seek high-interest loans. By using Clarity, Defendants could bypass Experian's more stringent credentialing and conceal the role of La Posta Tribal Lending Enterprise ("La Posta Lending")[7] in offering these loans. Such practices also make it more difficult for consumers to know who obtained their report.

Plaintiffs allege that Clarity obtained their consumer reports from Experian and sold them to Lead Express, who would "*purportedly*" utilize the information to evaluate consumers for

---

A person shall not use or obtain a consumer report for any purpose unless--

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f).

[6] Section 1681(b)(a) enumerates a list of six specific circumstances under which a consumer reporting agency may provide a consumer report. *See* 15 U.S.C. § 1681(b)(a).

[7] Plaintiffs do not explicitly allege La Posta Lending's role in the scheme. A declaration submitted by Defendants indicates that La Posta Lending acts as an originator of loans. (*See, e.g.*, First Chung Decl. ¶ 16, ECF No. 27-1 (stating in a sworn affidavit that Lead Express obtains consumer reports to assist La Posta Lending with the origination of loans).) Plaintiffs' briefing suggests that Plaintiffs concur in this characterization.

3

loans. (*Id.* ¶ 15.) In accordance with this practice, Lead Express executed an "end user" agreement with Clarity, in which Lead Express represented that it constituted the "end user" of the consumer reports.[8] (*Id.* ¶ 16.) Lead Express then obtained consumer reports from Clarity, including more than 30,000 consumer reports on Virginia consumers during a five-year period. The purpose of obtaining these reports was to ultimately target Virginia consumers for high-interest loans, but Lead Express did not solicit consumers for loans or provide loans to the Virginia consumers directly. Instead, "[i]f the consumer's data obtained from Clarity satisfied Lead Express's loan criteria, an affiliate company, not Lead Express, would solicit the consumer for a loan." (*Id.* ¶ 26.) Lead Express obtained Gillison's consumer report on January 17, 2014, and Mays-Johnson's report on May 8, 2015, in order to market high-interest loans to them.

In spite of Lead Express's certification that it was the "end user" of the consumer reports, Lead Express never provided a "firm offer of credit" to Plaintiffs, and Plaintiffs never applied for credit with Lead Express or authorized Lead Express to pull their reports.[9] (*Id.* ¶ 23.) Rather, Lead Express purchased the consumer data "in order to obtain leads on potential consumers who may be interested in high-interest loans"—data an affiliate company would use to offer loans to consumers. (*Id.* ¶¶ 25–26.) Accordingly, Plaintiffs contend, Lead Express "lacked a permissible purpose to obtain Plaintiffs' consumer reports." (*Id.* ¶¶ 23, 27.)

---

[8] An "end user" is "the actual creditor who would ultimately use the report to evaluate the consumer for credit." (Second Am. Compl. ¶ 16.)

[9] Plaintiffs allege that "upon information and belief, *not a single consumer ever* applied for credit with Lead Express and Lead Express never loaned any consumer any amount of money." (Second Am. Compl. ¶ 24 (emphasis added).)

4

B. **Procedural Background**

Plaintiffs assert two related class claims against the Defendants: (1) a violation of 15 U.S.C. § 1681b(f) ("Count One"); and, (2) a violation of 15 U.S.C. § 1681q ("Count Two").[10] Plaintiffs allege that Defendants' violations entitle each consumer to statutory damages between $100 and $1,000 under § 1681n(a).[11]

After Plaintiffs filed their Second Amended Complaint, Defendants moved to dismiss it under three separate theories: (1) lack of subject-matter jurisdiction because the Plaintiffs did not have standing to bring this lawsuit;[12] (2) lack of personal jurisdiction; and, (3) improper venue. (*See* Mot. Dismiss, ECF No. 26). Alternatively, Defendants requested that the Court transfer the case to the United States District Court for the Central District of California as the proper venue.[13]

Before briefing on the Motion to Dismiss concluded, Plaintiffs filed the Motion for Permission to Take Jurisdiction-Related Discovery (the "Motion for Discovery"). (ECF No. 31.)

---

[10] Plaintiffs mistakenly allege that they assert Count Two under "15 U.S.C. § 1681q(a)." Section 1681q, however, does not contain a subsection (a). Section 1681q, which the Court presumes to be at play here, provides: "Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under Title 18, imprisoned for not more than 2 years, or both." 15 U.S.C. § 1681q.

[11] Section 1681n(a) provides that "[a]ny person who willfully fails to comply with" the FCRA "is liable to that consumer" for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000" and "such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n(a).

[12] In ruling on the Motion to Dismiss, the Court determined that Plaintiffs sufficiently alleged an injury in fact under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Because the Court will dismiss the Complaint for lack of personal jurisdiction, the Court declines to reexamine its analysis in light of the United States Court of Appeals for the Fourth Circuit's most recent evaluation of standing in *Dreher v. Experian Information Solutions, Inc.*, 856 F.3d 337 (4th Cir. 2017).

[13] Because Plaintiffs failed to establish personal jurisdiction, *Gillison I* did not address venue.

Plaintiffs requested that the Court permit the parties to conduct discovery for 90 days if the Court found that Plaintiffs had not established personal jurisdiction.

In *Gillison I*, the Court found that Plaintiffs' Second Amended Complaint "fail[s] to make a prima facie showing of specific personal jurisdiction." (*Gillison I* 19.)[14] The Court denied Plaintiffs' Motion for Discovery because the requested discovery bore "little relevance to the allegations of specific jurisdiction pleaded."[15] (*Id.* 29.) On the other hand, the Court

---

[14] In *Gillison I*, the Court identified two theories of personal jurisdiction and found both deficient. First, the Court found unpersuasive Plaintiffs' contention that "Defendants' business contacts rise to the level of purposeful availment." (*Gillison I* 20.) Plaintiffs' argument relied on its claim that Lead Express obtained over 30,000 consumer reports from Clarity about Virginia consumers. The Court found that "[o]btaining information on Virginia consumers from a third-party without any direct interaction with those Virginia consumers does not establish purposeful availment." (*Gillison I* 21 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).) Plaintiffs argued that Lead Express may have solicited Virginia consumers for loans, but the Court rejected these attempts to establish minimum contacts as speculative and at odds with Plaintiffs' allegations in the Second Amended Complaint that Lead Express did not have any contacts or relationship with the Virginia consumers about whom it obtained consumer reports.
Next, the Court discussed Plaintiffs' theory under the "effects" test, "which gives the Court personal jurisdiction over a defendant if he or she intentionally directed activity in the forum state that caused harm to the plaintiff." (*Gillison I* 25.) But the Court concluded that the "effects" test, articulated in *Calder v. Jones*, 465 U.S. 783, 791 (1984), does not eliminate the requirement that the defendant have taken affirmative action to avail itself of the privilege of doing business in the forum state. Because the Second Amended Complaint alleges "injury in Virginia caused by [Defendants'] activities in a foreign state," and not in Virginia, the Court concluded the Second Amended Complaint did not establish personal jurisdiction over Defendants in Virginia. (*Gillison I* 26.)

[15] To establish specific personal jurisdiction, a plaintiff must show not only that Defendants had meaningful contacts in Virginia, but also that those contacts form the basis of the suit. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). A Court may deny jurisdictional discovery "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state." *Carefirst*, 334 F.3d at 402.
In *Gillison I*, the Court found that some of the information sought in the Motion for Discovery might establish that Defendants had contacts in Virginia, but would not establish that those contacts form the basis of *this* suit. For example, information about "Defendants' Virginia profits or [Defendants'] marketing in Virginia," does not relate to Plaintiffs' claim that Defendants improperly obtained Plaintiffs' credit consumer reports from Clarity. (*Gillison I* 31.)

considered with trepidation "Defendants' patently inconsistent declarations" regarding their business, finding that the inconsistencies did not give Plaintiffs a fair opportunity to make their case regarding specific personal jurisdiction.[16] (*Gillison I* 31.)

In the interest of justice, and to clarify the record, the Court ordered parties to brief the need for jurisdictional discovery in light of *Gillison I*.

## II. Applicable Legal Standards

### A. Legal Standard to Permit Jurisdictional Discovery

Discovery under the Federal Rules of Civil Procedure is generous in scope and freely permitted, and district courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (alterations in original) (quoting *In re Multi–Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)). A district court does not abuse its discretion by denying jurisdictional discovery "[w]hen a plaintiff offers only speculation or conclusory assertions[.]" *Carefirst*, 334 F.3d at 402; *see also Base Metal Trading, Ltd v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 216 n.3 (4th Cir. 2002) (finding the district court did not abuse its discretion in denying jurisdictional discovery where "the plaintiff simply want[ed] to conduct a

---

Additionally, the Court concluded Plaintiffs' assertion that Defendants impermissibly obtained over 30,000 consumer reports about Virginia residents did not suffice to support Plaintiffs' claim that Defendants reached into Virginia or offered loans to Plaintiffs.

[16] In *Gillison I*, the Court discussed the declarations filed in this case and an inconsistent declaration submitted by the same person in a different case. *See* Decl. of Naito for Lead Express, Inc., *Turnage v. Clarity Services, Inc.*, 3:15cv760, ECF No. 30-1. The Court addressed these inconsistencies at length in *Gillison I*. "The conflicting descriptions, under oath, before the same court raise questions regarding the Defendants' full candor about the business Lead Express conducts." (*Gillison I* 31.)

The Court ordered Defendants to address the inconsistencies because "conflicting descriptions of how Lead Express and Naito conduct business hinders the Plaintiffs' ability to fairly state their case." (*Id.*) The Court did not rely on the declarations for the purpose of denying the Motion for Discovery in *Gillison I*.

7

fishing expedition in the hopes of discovering some basis of jurisdiction"); *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 554 (E.D. Va. 2004) ("The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only 'bare allegations' to dispute defendant's affidavits denying jurisdictional acts or contacts.").

Jurisdictional discovery can be appropriate when a plaintiff files a motion containing "specific and substantive" allegations regarding a court's jurisdiction, *see, e.g.*, *Mamo*, 2006 WL 572327 at *2, or when "'significant gaps in the record' exist[]" regarding the court's jurisdiction over the defendant. *Weinstein v. Todd Marine Enters.*, 115 F. Supp. 2d 668, 676 (E.D. Va. 2000) (quoting *Coastal Video Commc'ns Corp. v. The Staywell Corp.*, 59 F. Supp. 2d 562, 571 (E.D. Va. 1999)).

### B. Personal Jurisdiction: Burden of Proof[17]

When a district court considers a challenge to personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, rather than show jurisdiction by a preponderance of the evidence. *Carefirst*, 334 F.3d at 396; *see also Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) ("[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction." (quoting *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 603–04 (3d Cir. 1990)).).

"The [c]ourt, in deciding whether a plaintiff has met th[e] burden [of making a prima facie case supporting personal jurisdiction], must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences

---

[17] Although the Court has already established that the Second Amended Complaint fails to make a prima facie showing of personal jurisdiction over Defendants, *see generally Gillison I*, the Court considers the requirements of personal jurisdiction to analyze whether granting leave to conduct jurisdictional discovery might result in Plaintiffs meeting their burden.

8

for the existence of jurisdiction." *Brooks*, 242 F. App'x at 890. Still, a plaintiff cannot rely on "bare pleadings alone" after a defendant properly challenges personal jurisdiction. *Machulsky*, 210 F. Supp. 2d at 537 (quotation omitted). Instead, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits and competent evidence . . . . [A] plaintiff must respond with actual proof[], not mere allegations." *Id.* (quotation omitted).

### C. Personal Jurisdiction: Legal Standard

Federal courts exercise personal jurisdiction in the manner provided by state law. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Therefore, a district court must first decide whether Virginia state law permits the court to exercise personal jurisdiction over the defendant, and second, whether the exercise of such jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Id.*; *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997).

"Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996)) (internal citation omitted). Accordingly, the inquiry becomes whether the defendants maintain sufficient minimum contacts with the forum state so as not to offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

"The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also

provide the basis for the suit." *Carefirst*, 334 F.3d at 397. If a defendant's contacts with the state also constitute "the basis for the suit, those contacts may establish specific jurisdiction. . . . [I]f the defendant's contacts with the State are not also the basis for suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the State."[18] *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citing *Helicopteros*, 466 U.S. at 414 & nn.8–9).

The Fourth Circuit has adopted a three-part test to determine whether specific jurisdiction exists. *Reynolds Foil*, 2010 WL 1225620, at *2. Specifically, the Court must consider: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State;[19] (2) whether the plaintiffs' claims arise out of those activities directed at

---

[18] General jurisdiction exists only when a defendant's "affiliations with the [s]tate are so 'continuous and systematic' as to render [it] *essentially at home* in the forum [s]tate.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (emphasis added). For company-defendants, "only a limited set of affiliations with a forum" will typically satisfy this standard, such as the defendant's place of incorporation or principal place of business. *Id.*
Over time, "specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role." *Id.* at 755 (quoting *Goodyear*, 564 U.S. at 925 (brackets in original)). Specifically, the Supreme Court of the United States has indicated that "[a]s this Court has increasingly trained on the relationship among the defendant, the forum, and the litigation, *i.e.*, specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Id.* at 758 (internal quotation and citation omitted).
Appropriately, the Plaintiffs do not seek to establish general personal jurisdiction, and the Court need not address general personal jurisdiction further.

[19] With respect to the first factor, "no clear formula [exists] for determining what constitutes 'purposeful availment.'" *Reynolds Foil*, 2010 WL 1225620, at *2. The Court, however, may consider whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business

the State;[20] and[,] (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."[21] *ALS Scan*, 293 F.3d at 712 (alteration in original) (internal citations omitted). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Consulting Eng'rs*, 561 F.3d at 278.

---

transactions; and, whether the performance of contractual duties was to occur within the forum. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

Further, the Supreme Court long has held that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder*, 465 U.S. at 791 ("Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California."). *Calder*, however, does not vest jurisdiction in a state merely because it serves as the locus of the plaintiff's injury. *See Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("[M]ere injury to a forum resident is not a sufficient connection to the forum.").

The "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum *in a meaningful way*." *Id.* (emphasis added); *see also ESAB*, 126 F.3d at 626 ("Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld.").

[20] "The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278-79 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros*, 466 U.S. at 414).

[21] The third prong of the specific jurisdiction test "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Consulting Eng'rs.*, 561 F.3d at 279. Specifically, the court may consider: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and, (5) the interests of the states in furthering substantive social policies. *Id.* (citing *Burger King*, 471 U.S. at 477). The Court need not address this prong because Plaintiffs cannot show that Defendants' contacts with the forum state form the basis of this suit and the requested discovery would not cure this deficiency.

## III. Analysis

### A. The Requisite Showing for Plaintiffs' Claims to Survive

Plaintiffs bear the ultimate burden to show that the Court has specific personal jurisdiction over Defendants by a preponderance of the evidence. *See Carefirst*, 334 F.3d at 396. To meet their burden, Plaintiffs must show that Defendants (1) "purposefully avail[ed] [themselves] of the privilege of conducting activities in [Virginia] . . . [(2) that] [P]laintiffs' claims arise out of those activities directed at the State . . . and . . . [(3) that] the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan*, 293 F.3d at 712 (internal citations omitted).

Count One alleges that Defendants improperly obtained Plaintiffs' "consumer reports from Clarity without a permissible purpose," in violation of 15 U.S.C. § 1681b(f). (Second Am. Compl. ¶ 50.) For Count One to survive, Plaintiffs must show both that Defendants have meaningful contacts to Virginia, and that those contacts relate to the allegedly improper acquisition of the reports from Clarity. *See Walden*, 134 S. Ct. at 1125.

Count Two claims that Defendants knowingly misrepresented themselves to Clarity as the end user of the reports it obtained from Clarity, in violation of 15 U.S.C. § 1681q. For Count Two to survive, Plaintiffs must show both that Defendants have meaningful contacts to Virginia, and that those contacts relate to the allegedly improper misrepresentation to Clarity. *See Walden*, 134 S. Ct. at 1125.

For the reasons below, the Court finds that granting leave to take limited jurisdictional discovery would not cure the deficiencies in the Second Amended Complaint. The Court will therefore dismiss the case without prejudice.

## B. The Court Will Not Permit Discovery Because Plaintiffs Fail to Articulate Specific and Substantive Allegations Warranting a Jurisdictional Inquiry

The Discovery Brief proposes discovery covering six areas: (1) all documents and data Defendants possess about Plaintiffs; (2) "all contracts with any consumer reporting agencies or other entity regarding the obtaining of credit information and selling of credit information or leads for the named Plaintiffs;" (3) "documents in which Defendants claim a loan was offered to named Plaintiffs or Virginia consumers, or named Plaintiffs, or Virginia consumers were considered for a loan;" (4) all communications with non-parties related to the Defendants' declarations; (5) depositions of Naito and Chan Joo Chung;[22] and (6) "all documents analyzing the market for high interest loans in Virginia, and any studies completed regarding Virginia consumers, including the named Plaintiffs." (Disc. Br. 1–5, ECF No. 44 (some capitalization altered from original).) The Court addresses each area in turn.

### 1. The Court Will Not Permit Discovery Related to Documents Defendants Possess About Plaintiffs Because Plaintiffs Offer Only Speculation and Conclusory Assertions As Justification

The Court cannot justify granting discovery for Plaintiffs' broad request for all documents and data that Defendants may possess about Plaintiffs. In support of this request, Plaintiffs describe "suspicions that Defendants" knowingly targeted Virginia consumers when they purchased the batch reports from Clarity. (Disc. Br. 2.) The Second Amended Complaint alleges that Lead Express "secretly purchase[d] consumer reports in batches in order to target vulnerable consumers, including consumers residing in Virginia, who may be interested in high-interest internet loans." (Second Am. Compl. ¶ 12.) According to Plaintiffs, Lead Express has

---

[22] Chan Joo Chung is the general manager of Naito Corporation.

13

obtained millions of consumer reports in this manner, including over 30,000 consumer reports from Virginians.[23]

Plaintiffs contend that the requested information would ultimately establish specific personal jurisdiction over Defendants because the information "will support Plaintiffs' suspicion that Defendants purposefully and knowingly reached into Virginia seeking to solicit consumers here and did, in fact, solicit some consumers in Virginia pursuant to their scheme." (Disc. Br. 2.) This information, Plaintiffs, contend, "will also likely reveal Defendants' sources of information, which Plaintiffs believe will include databases or courthouses in Virginia." (*Id.*) The argument cannot prevail.

Plaintiffs must ultimately establish specific personal jurisdiction based on Defendants' alleged contacts in Virginia that give rise to the causes of action in this suit. In *Gillison I*, the Court found that Plaintiffs' claim that Defendants impermissibly obtained 30,000 reports *on* Virginians—rather than *from* Virginians[24]—was not sufficiently "specific and substantive" to support Plaintiffs' claims that Defendants reached into Virginia or offered loans to Plaintiffs. *See Mamo*, 2006 WL 572327, at *2.

Plaintiffs attempt to cure this deficiency by arguing in their Discovery Brief that Defendants obtained information about Plaintiffs from databases or courthouses located in Virginia. But in their Second Amended Complaint, Plaintiffs allege that Defendants obtained the consumer reports from Clarity, a Nevada corporation.[25] Plaintiffs' suggestion in their Discovery

---

[23] The named plaintiffs' consumer reports are among the 30,000 reports allegedly obtained from Virginians.

[24] *Gillison I* described this distinction as "critical," (*Gillison I* 21), and it remains so.

[25] Whether Clarity obtained the information from Virginia courthouses has no bearing on whether the Court can exercise jurisdiction over Defendants. *See Helicopteros*, 466 U.S. at 417

14

Brief that Defendants may have obtained the information from Virginia sources, as opposed to obtaining the information from Clarity, contradicts the assertions in the Second Amended Complaint. The Court cannot weigh this contradictory statement in Plaintiffs' favor when deciding whether to grant jurisdictional discovery.

Even were the Court to consider this requested information relevant to the jurisdictional inquiry, Plaintiffs' "suspicions," (Disc. Br. 2), constitute only "speculation" and "conclusory assertions," *Carefirst*, 334 F.3d at 402. These suspicions do not rise to the level of "specific and substantive allegations" regarding the Court's jurisdiction that would justify jurisdictional discovery. *Mamo*, 2006 WL 572327, at *2. The Court declines to allow discovery based on these speculative claims about this attenuated nexus.

### 2. The Court Will Not Permit Discovery Related to Contracts About Obtaining or Selling Plaintiffs' Credit Information Because the Request Lacks Specificity

In their second request, Plaintiffs seek contracts related to obtaining or selling Plaintiffs' credit information. Plaintiffs argue this information would show that Defendants "specifically sought information on Virginia consumers" and would justify the exertion of specific personal jurisdiction over Defendants. (Disc. Br. 3.) Plaintiffs allege this would be especially true "should this information show that Defendants' agreements expressly demanded that entities with whom it dealt provide information on consumers located in Virginia." (*Id.*)

But Plaintiffs do not assert substantive factual allegations about whether such information exists. Absent any evidence to support this request for discovery, the request constitutes speculation. *See Carefirst*, 334 F.3d at 402. Plaintiffs offer no basis on which the Court could

---

("[T]he unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

substantiate their contention that Defendants specifically sought information on Virginia consumers. Further, the assertion appears at odds with their Second Amended Complaint. Although Plaintiffs allege that Defendants obtained "more than 30,000 consumer reports from Clarity on Virginia consumers" during a five year period, (Second Am. Compl. ¶ 19), this represents only a portion of the "millions" of consumer reports that Defendants allegedly obtained, (*id.* ¶ 2).

Even putting the inconsistencies aside, the Court concludes that, although information showing that Defendants specifically demanded information on Virginia consumers may support Plaintiffs' arguments that Defendants targeted Virginia consumers specifically, these claims lack the specificity or substantiation to grant jurisdictional discovery here. *See Mamo*, 2006 WL 572327, at *2; *see also Base Metal Trading*, 283 F.3d at 216 n.3.

### 3. The Court Will Not Permit Discovery About Documents Related to Loan Offerings to Virginia Consumers Because the Requested Documents Could Not Support a Finding of Specific Personal Jurisdiction in this Suit

Nothing in the Second Amended Complaint supports granting jurisdictional discovery related to documents in which Defendants offered or considered offering loans to Plaintiffs because such documents do not sufficiently relate to the causes of action in the Second Amended Complaint. The allegations in the Second Amended Complaint aver that Defendants impermissibly obtained consumer information about Defendants because Lead Express was not the end user of the reports. Plaintiffs allege that Defendants never provided a "firm offer of credit" to Plaintiffs, and that Lead Express obtained "millions of consumer reports on consumers with whom it has no relationship." (Second Am. Compl. ¶¶ 2, 23.)

To the extent the requested documents may show that Defendants have some contacts with Virginia, they could not show that those contacts form the basis of this suit because the

16

requested documents would not sufficiently relate to the causes of action here: improperly obtaining consumer reports from Clarity as to the named plaintiffs, and misrepresenting themselves as the end user to Clarity as part of that acquisition. *See ALS Scan*, 293 F.3d at 712. The Court also concludes that any discovery as to unknown class members is too attenuated to allow.

### 4. The Court Will Not Permit Discovery As to Communications with Non-Parties Related to the Declarations Because this Discovery Could Not Undergird Specific Personal Jurisdiction in this Suit

The Court previously noted "startling inconsistencies" in declarations submitted by both Naito and Chung in this case, when compared with a declaration Naito submitted in another case related to Lead Express's business practices.[26] Specifically, the Court noted in *Gillison I* that "[t]he conflicting descriptions, under oath, before the same court raise questions regarding the Defendants' full candor about the business Lead Express conducts. The Court cannot see a rational way to reconcile the two sets of affidavits in this case and the affidavit in *Turnage*." (*Gillison I* 31.)

Plaintiffs seek information about "the process that went into creating the declarations, including any edits or suggestions for changes made by Defendants or Mr. Chung." (Disc. Br. 4.) This information, Plaintiffs state, will show "whether Defendants took affirmative steps to conceal information that would tie their business activities to Virginia." (Disc. Br. 5.)

In response to the Court's instructions in *Gillison I*, Defendants submitted revised declarations, (ECF Nos. 45-1, 45-2), and attempt to explain the inconsistencies, (Resp. 5, ECF No. 45). Counsel for Defendants states that "[a]fter investigating the matter, including speaking with Messers. Naito and Chung, their prior declarations should have been more specific and

---

[26] *See* Decl. of Naito for Lead Express, Inc., filed in *Turnage v. Clarity Services, Inc.*, 3:15cv760, ECF No. 30-1. The Court discussed these inconsistencies at length in *Gillison I*.

provided more explanation, which would have avoided the issues raised by the Court and any confusion." (*Id.* 5–6.) The Response does not elaborate on how further specificity or explanation in *Turnage* would have avoided the present problems.

The Response also states, "Undersigned [C]ounsel did not know of the existence of Mr. Naito's Declaration submitted in *Turnage* until Plaintiffs cited it in their briefing." (*Id.* 5.) In Reply, Plaintiffs describe this statement as "utterly stunning, as the 'Undersigned Counsel' referred to here was also Counsel for Clarity in *Turnage*." (Reply 5, ECF No. 46.) Plaintiffs attach a Notice of Appearance from *Turnage* indicating that "Undersigned Counsel" for Defendants represented Clarity in *Turnage*. (ECF No. 46-1.)

The Court remains deeply troubled by the declarations submitted by Naito and Chung. As in *Gillison I.* The Court does not rely on these declarations to reach its finding here. Despite the serious issues with Defendants' declarations, the Court cannot conclude that discovery about their creation would ultimately cure the underlying deficiencies in the Second Amended Complaint, because nothing in the record suggests that discovery about the creation of the declarations would establish specific personal jurisdiction over Defendants. Of course, the Court cautions *any* party or attorney who submits declarations under oath in this Court to do so with an eye toward the consequences of doing so incorrectly, or even inartfully.

### 5. The Court Will Not Permit Depositions of Naito and Chung Because Plaintiffs' Justifications Constitute Conclusory Assertions

Similarly, the Court cannot find that deposing Naito and Chung would establish specific personal jurisdiction. Although Plaintiffs raise notable concerns regarding the reliability of Naito and Chung's declarations, Plaintiffs nevertheless fail to make "specific and substantive allegations" regarding the Court's jurisdiction based on the declarations themselves. *See Mamo*, 2006 WL 572327, at *2.

18

Plaintiffs contend that discovery about the creation of the declarations would show "whether Defendants took affirmative steps to conceal information that would tie their business activities to Virginia." (Disc. Br. 5.) But Plaintiffs do not directly allege that Defendants have concealed information that would tie their business activities to Virginia in a way that would give rise to specific personal jurisdiction. On the record before it, the Court concludes that arguments suggesting that deposing Naito and Chung would result, ultimately, in establishing specific personal jurisdiction over Defendants amount to speculation. The Court declines to order depositions of Naito or Chung.

> 6. **The Court Will Not Permit Discovery As to Studies and Analyses Related to High-Interest Loans in Virginia Because this Discovery Could Not Support a Finding of <u>Specific Personal Jurisdiction in this Suit</u>**

Finally, the Discovery Brief requests "all documents analyzing the market for high interest loans in Virginia, and any studies completed regarding Virginia consumers, including the named Plaintiffs." (Disc. Br. 5.) Plaintiffs contend this information will "give insight as to the true focus of [Defendants'] business aims and dealings as to Virginia consumers." (*Id.*) Plaintiffs posit that this information will "confirm[] Plaintiffs' allegations that Defendants obtained thousands of records about Virginia consumers with the express intent of marketing high-interest loans to those Virginia residents." (*Id.*)

No evidence—indeed, no allegation—exists in the Second Amended Complaint suggesting that Defendants marketed or offered loans to Virginia residents. Instead, the Second Amended Complaint alleges that Lead Express compiled the information for an affiliate company to target Virginia consumers for a loan. The Court cannot alter its finding in *Gillison I* that nothing in the record exists to allow the Court to impute the actions of these unrelated or affiliate entities to Defendants in this case.

Studies and other information that Defendants may have acquired or developed regarding the market for high interest loans in Virginia, then, have no bearing on the jurisdictional questions before the Court: whether Defendants' actions or activities in Virginia or related to Virginia tie Defendants to Virginia in a meaningful way; and whether those actions or activities relate directly to Defendants' alleged improper acquisition of Plaintiffs' consumer reports. Even were the Court to consider this information relevant, Plaintiffs offer no evidence that these studies exist. The Court cannot allow jurisdictional discovery when such speculative and attenuated allegations do not establish a basis for it to do so.

Because the requested discovery cannot cure the jurisdictional deficiencies in the Second Amended Complaint, the Court shall dismiss the case without prejudice.

## IV. Conclusion

For the foregoing reasons, the Court finds jurisdictional discovery unwarranted and will dismiss the Second Amended Complaint without prejudice.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 12/12/18
Richmond, Virginia